IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STEVEN JEREMY FREEMAN, | Case No. 2:20-cv-00602-CL |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| SCHWARTZ et al., | |
| Defendants. | |

CLARKE, Magistrate Judge.

Plaintiff Steven Freeman, ("Plaintiff"), a self-represented litigant in custody at Oregon State Penitentiary, brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging that while housed at Two Rivers Correctional Facility ("Two Rivers") and Eastern Oregon Correctional Facility ("Eastern Oregon"), he was denied kosher Passover meals and adequate medical care, subjected to excessive force and sexual harassment, and wrongfully removed from the Rehabilitating Offenders and Canines Dog Handlers program ("Dog Handlers Program"). *See* Compl., ECF No. 2. This matter comes before the Court on Defendants' Motion for Summary

Judgment. Defs.' Mot. for Summ. J., ECF No. 89. For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.[1]

BACKGROUND

The events underlying Plaintiff's claims occurred while he was incarcerated at Two Rivers and Eastern Oregon, span more than thirteen months and relate to five distinct set of facts: his requests for kosher Passover meal accommodations in 2019 (Claim One), the application of restraints during a medical transport on June 21, 2019 (Claim Two), his alleged medical need for a wheelchair in February 2019 (Claim Three), his alleged sexual harassment on January 15, 2019 (Claim Four), and his removal from his work assignment in the Dog Handlers Program in 2018 (Claim Five).

Plaintiff brings this action under the First, Eighth and Fourteenth Amendments, the Americans with Disabilities Act ("ADA") and state law. He names as Defendants Superintendent Troy Bowser ("Superintendent Bowser"), Intake Officer John Doe ("Officer John Doe"), former Nurse Practitioner Linda Gruenwald ("Nurse Gruenwald"), Chaplain Donald Hodney ("Chaplain Hodney"), former Medical Services Manager Shannon Johnston ("Medical Manager Johnston"), Correctional Counselor Bob Martinez ("Counselor Martinez"), Assistant Superintendent of Security David Pedro ("Superintendent Pedro"), Chaplain Lorinda Schwarz ("Chaplain Schwarz"), Accounting Supervisor Dawn Wagner ("Supervisor Wagner"), Correctional Lieutenant Brian Washburn ("Lieutenant Washburn"), Superintendent Susan Washburn ("Superintendent Washburn"), and Oregon Department of Corrections ("ODOC") Religious Services Manager Stuart Young ("Religious Manager Young").

---

[1] All parties have consented to allow a Magistrate Judge to enter final orders and judgment in the case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 19.

LEGAL STANDARDS

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

DISCUSSION

I.    Denial of Kosher Passover Meals (Claim 1)

    *A.    Factual Background*

In 2019, ODOC offered two versions of Passover meals: 1) a kosher diet tray (meeting Orthodox Jewish standards), and 2) a veggie tray with matzo (meeting Messianic Jewish

standards). Defs.' Mot. for Summ. J. at 3. Inmates on the kosher diet program automatically received kosher diet tray Passover meals. *Id*. All other inmates were required to sign up in advance to receive kosher diet tray Passover meals. *Id*. Because kosher meals are prepared by a third-party supplier in kosher kitchens, inmates not on the kosher diet program were required to sign up for kosher Passover meals in advance. Young Decl. at 2. The deadline to sign up for Passover meals in 2019 was January 25, 2019. *Id*. Plaintiff was not on a kosher diet program in 2019, so he needed to sign up for kosher Passover meals by the January 25 deadline. *Id*.; Defs.' Mot. for Summ. J. at 3-4.

On January 15, 2019, Plaintiff was transferred to Eastern Oregon and, upon his arrival, asked Chaplain Schwarz about religious services offered at the facility. Compl. at 7. Plaintiff alleges that he asked to sign up for kosher Passover meals, but Chaplain Schwarz told him that they were not offered. *Id*. Instead, Chaplain Schwarz offered him an alternative veggie tray with matzo, but that option was unacceptable to Plaintiff. *Id*.

According to Defendants, when Chaplain Schwarz met with Plaintiff she asked if he was on a special diet for Passover and Plaintiff reported that he was not. Young Decl. at 3, 20, ECF No. 94. Defendants claim that Chaplain Schwarz "specifically asked [Plaintiff] if he wanted the 8 days for Kosher for Passover," and Plaintiff responded that he "[wasn't] on Kosher diet so what did that mean?" *Id*. at 20. Chaplain Schwarz then offered Plaintiff the veggie tray with matzo instead, and Plaintiff said that he expected to be back at Oregon State Penitentiary by Passover. *Id*. Chaplain Schwarz allegedly asked at least two more times if Plaintiff wanted the veggie tray with matzo, and clarified with Plaintiff that he "didn't want any special Passover accommodation [to his] diet then, and [Plaintiff] responded that was correct." *Id*. Chaplain Schwarz advised Plaintiff

to let her know "in the next day or two" if he changed his mind and wanted kosher diet tray

Passover meals so that she could tell the Central Office. *Id.*

Plaintiff was transferred to Two Rivers on February 13, 2019, and asked Chaplain Hodney

to sign up for kosher Passover meals. Compl. at 8. However, because Plaintiff did not sign up for

kosher Passover meals at Eastern Oregon, and the sign-up deadline had already passed, Chaplain

Hodney was unable to accommodate Plaintiff's request for kosher Passover meals at Two Rivers.

*Id.* Plaintiff filed a grievance regarding these events. Young Decl. at 5-26. Religious Manager

Young responded to and denied Plaintiff's grievance appeal, finding that "the chaplain[s'] actions

were appropriate and aligned with [O]DOC ru[l]e, policy and processes." *Id.* at 14.

> B.    *Analysis*

>> 1.    *First Amendment Claim*

Plaintiff alleges that Chaplains Schwarz and Hodney, and Religious Manager Young all

wrongly denied his timely requests for kosher Passover meals in violation of his First and

Fourteenth Amendment rights. Compl. at 7-8. Defendants state that they were unable to

accommodate Plaintiff's request for kosher Passover meals because Plaintiff failed to sign up by

the January 25 deadline and they are therefore entitled to summary judgment as a matter of law.

Defs.' Mot. for Summ. J. at 4. Defendants argue that Chaplain Hodney and Religious Manager

Young were not personally involved in any constitutional violation, that none of the Defendants

violated Plaintiff's constitutional rights, and they are otherwise entitled to qualified immunity. *Id.*

at 4-9.

The Free Exercise Clause of the First Amendment, made applicable to the states through

the Fourteenth Amendment, "forbids all laws 'prohibiting the free exercise' of religion." *McDaniel*

*v. Paty*, 435 U.S. 618, 620 (1978) (citing U.S. Const. amend. I). While the First Amendment

guarantees the right to the free exercise of religion, this right "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987)). A violation of the Free Exercise Clause occurs when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008). To be considered a "substantial burden," the challenged state action "must impose a significantly great restriction or onus upon [religious] exercise," such that it "intentionally puts significant pressure on inmates . . . to abandon their religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995-96 (9th Cir. 2005).

### a.     *Chaplain Schwarz*

Plaintiff presents evidence that he asked Chaplain Schwarz for kosher diet tray Passover meals upon his transfer to Eastern Oregon on January 15, 2019 -- ten days before the sign-up deadline. *See* Compl. at 7 ("I then told [Chaplain Schwarz] that I need to be placed on the Kosher Passover meals."); Pl.'s Resp. in Opp'n at 6-7, ECF No. 96 ("Plaintiff claims he signed up in a timely manner;" "plaintiff claims that his request was made well before the sign-up deadline;" "This claim is about the actions of Chaplain Schwarz."). Defendants present evidence that, during the course of Chaplain Schwarz's conversation with Plaintiff, she offered Plaintiff kosher Passover meals several times and confirmed that he did not want it. Young Decl. at 20. Where, as here, the evidence conflicts, "questions of credibility and motivation generally present an issue of material fact inappropriate for resolution on summary judgment." *Uhuru v. Hart*, No. CV 07-07361-JVS (VBK), 2009 WL 3489376, at *7 (C.D. Cal. Oct. 27, 2009). Plaintiff has thus raised a genuine issue of material fact as to whether he made a timely request to Chaplain Schwarz for kosher diet

tray Passover meals. Defendants' motion for summary judgment therefore must be denied as to Plaintiff's First Amendment claim against Chaplain Schwarz.

> b.    *Chaplain Hodney and Religious Manager Young*

Plaintiff argues that he made a timely request for kosher Passover meals to Chaplain Hodney which was forwarded to and denied by Religious Manager Young. Pl's Resp. in Opp'n at 4. He states that he is not challenging "anything about the sign-up deadline, other than to assert that he met [it]." *Id.* at 7 ("[Claim 1] mentions nothing about any fault in the [ODOC] Policy regarding a sign-up deadline for Passover."). However, Plaintiff concedes that his request was made to Chaplain Hodney and Religious Manager Young only after his February 13 transfer to Eastern Oregon. *Id.* at 4-5; Compl. at 8. Plaintiff therefore made his request after the January 25 sign-up deadline. Because Plaintiff cannot show that he made timely requests for kosher Passover meals to Chaplain Hodney and Religious Manager Young, their inability to accommodate his requests to do not rise to the level of constitutional violation.

To the extent that Plaintiff seeks to hold Religious Manager Young liable because he responded to and denied his grievance appeal, he may not do so. Simply denying a grievance appeal, without more, does not amount to constitutionally violative conduct because individuals in custody do not have a "separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *see also Fairley v. Shelton*, 664 F. App'x. 616, 617 (9th Cir. 2016) (holding that summary judgment for defendant was proper on plaintiff's claim arising out of the allegedly improper denial of his grievances). Accordingly, Chaplain Hodney and Religious Manager Young are entitled to summary judgment.

### 2. *Fourteenth Amendment Claim*

Plaintiff alleges that Chaplain Schwarz discriminated against him because of his religious beliefs in violation of the Equal Protection Clause. *See* Compl. at 7; Pl's Resp. in Opp'n at 7. At its core, equal protection prohibits the government from treating similarly situated persons differently. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To establish an equal protection violation based upon religion, a plaintiff must show that a prison official discriminated against him based on his religion by failing to afford him a reasonable opportunity to pursue his faith as compared to prisoners of other faiths and that such conduct was intentional. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

Plaintiff argues that his equal protection claim is rooted in Chaplain Schwarz's "discriminat[ion] against him because of her prejudice against Jews in denying him participation in the Passover celebration," Pl.'s Resp. in Opp'n at 7, but he offers no evidence to suggest Chaplain Schwarz's alleged failure to sign him up for kosher Passover meals was the product of discriminatory intent. Nor does Plaintiff provide evidence that Chaplain Schwarz treated him differently than other similarly situated individuals. Plaintiff's conclusory allegations of religious discrimination, without more, are insufficient to defeat a motion for summary judgment. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) (explaining that "[w]hen intent is an element of a constitutional violation . . . the primary focus is not on any possible animus directed at the plaintiff; rather, it is more specific, such as an intent to disadvantage all members of a class that includes the plaintiff"). Chaplain Schwarz is therefore entitled to summary judgment to Plaintiff's equal protection claim.

II.    Application of Tight Restraints (Claim 2)

 *A.    Factual Background*

 On June 21, 2019, Plaintiff was taken to Kadlec Regional Medical Center in Richland,

Washington for a "painful spinal surgery." Compl. at 9. Lieutenant Washburn came to Plaintiff's

recovery room and found Plaintiff completely unrestrained. Washburn Decl. at 2, ECF No. 92. He

placed Plaintiff in full body restraints, in accordance with ODOC Policy 40.1.1[2] ("Escorting of

Inmates") and OAR 291-022-0160.[3] *Id.* at 2-3. Plaintiff alleges that the restraints were "obviously

and visibly the wrong size," and that Lieutenant Washburn, allegedly while joking about Plaintiff's

physical size, stated that he would "just make them fit." Compl. at 9.

 Plaintiff claims that during his two-day stay at the hospital, the handcuffs were so tight

they caused him pain, made his wrists bleed, and resulted in scars on his wrists. *Id.*; Pl.'s Resp. in

Opp'n at 9.; Pl.'s Ex. at 12, ECF No. 96-1. Plaintiff alleges that nurses applied gauze and bandages

to his wrists to stop the bleeding. Compl. at 9; Pl.'s Resp. in Opp'n at 9-10. Plaintiff claims that

although Lieutenant Washburn knew that the restraints were causing Plaintiff injury, he "refused

to get the right size or do anything" to remedy the situation. Compl. at 9. Plaintiff later reported in

a grievance that he "had no feeling in [his] hands for the two days in the restraints," and still had

open wounds on his wrists a week later. Washburn Decl., Ex. 6 at 9-10. Defendants present

---

[2] Pursuant to Policy 40.1.1, only minimum custody work crews may be transported without restraints. Washburn Decl. at 2, Ex. 2 at 5-7. Every other AIC requires full restraints for a transport, unless there is a medical emergency during with restraint's may be removed on direction of medical staff, or unless the AIC is pregnant. *Id.*

[3] OAR 291-022-0160 provides for security restraints to be used during escort or transportation, that they be checked for tightness, and checked every 30 minutes to "verify [they] are not causing injury or an obvious medical problem." Washburn Decl. at 2-3, Ex. 3.

evidence that Plaintiff was placed in "flex cuffs" on June 21, 2019 after complaining that his handcuffs were too tight and requesting oversized restraints. Washburn Decl., Ex. 5.

B.    *Analysis*

In connection with the incident described above, Plaintiff brings against Lieutenant Washburn an excessive force claim under the Eighth Amendment and a claim for intentional infliction of emotional distress under state law. Compl. at 8-9. Defendants argue that 1) the use of restraints was necessary and applied in accordance with prison regulations, 2) Lieutenant Washburn is otherwise entitled to qualified immunity, and 3) Plaintiff's state law claim is barred by the Oregon Tort Claims Act ("OTCA") and the Eleventh Amendment. Defs.' Mot. for Summ. J. at 10-11.

1.    *Excessive Force Under the Eighth Amendment*

Plaintiff alleges that Lieutenant Washburn used excessive force in violation of the Eighth Amendment when he placed him in tight handcuffs. The use of force against an individual in custody constitutes cruel and unusual punishment in violation of the Eighth Amendment if it involves the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). An Eighth Amendment excessive for claim has two elements. First the plaintiff must demonstrate that the defendant used force which "was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting *Wilson v. Setter*, 501 U.S. 294, 298 (1991)). Second, the plaintiff must demonstrate that the defendant acted with a culpable mental state. *Hudson*, 503 U.S. at 8.

The core judicial inquiry for determining whether prison officials have violated the Eighth Amendment by using excessive physical force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7 (citing

*Whitley*). To make this determination, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 6-7.

Tight handcuffing may constitute excessive force where the individual is "either in visible pain, complained of pain, alerted the officer to pre-existing injuries, sustained more severe injuries, was in handcuffs for a longer period of time, asked to have the handcuffs loosened or released, and/or alleged other forms of abusive conduct in conjunction with the tight handcuffing." *Shaw v. City of Redondo Beach*, No. CV05-0481SVWFMOX, 2005 WL 6117549, at *7 (C.D. Cal. Aug. 23, 2005) (collecting cases); *see also Leon v. Celaya*, No. 20-CV-00899-AJB-BGS, 2022 WL 1308123, at *9 (S.D. Cal. May 2, 2022) (collecting cases), *report and recommendation adopted*, No. 20-CV-899-AJB-BGS, 2022 WL 3700560 (S.D. Cal. Aug. 8, 2022).

Here, Plaintiff presents evidence that he suffered pain and bleeding, and now has scars on his wrist from the tight handcuffs he wore for two days. Pl.'s Resp. in Opp'n at 9. He also complained directly to Lieutenant Washburn about the fit of the handcuffs when they were applied. Compl. at 9. Defendants state that the restraints were necessary[4] and argue that any injury caused by the application of the restraints was *de minimus*. Defs.' Reply at 4, ECF No. 97. Plaintiff's injuries, however, were obvious to medical staff who placed gauze on Plaintiff's wrists to stop the bleeding, Compl. at 9, and his scars were visible at least three months later, Pl.'s Ex. at 12. Because the parties offer conflicting evidence concerning the severity of Plaintiff's injuries, there is a

---

[4] Plaintiff does not challenge whether it was "in appropriate to apply full restraints," but argues that it was "unnecessary to apply restraints that were so tight" that they caused injuries. Pl.'s Resp. to Opp'n at 9.

genuine issue of material fact as to whether Lieutenant Washburn's application of tight restraints was excessive.

Defendants argue that Lieutenant Washburn is nevertheless entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In ruling on the issue of qualified immunity, the first inquiry is whether the facts show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second inquiry asks whether the constitutional right in question was "clearly established" at the time the conduct at issue occurred. *Id.* The Supreme Court clarified that although courts may apply these questions in order, courts have the discretion to end the inquiry if either question is answered affirmatively. *Pearson*, 555 U.S. at 236. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. As to an excessive force claim, the inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

Here, Lieutenant Washburn should have been aware that ignoring Plaintiff's complaints that the handcuffs were "obviously and visibly the wrong size," and cut Plaintiff's wrists enough to bleed upon application could constitute excessive force. Compl. at 9. Viewing this evidence in the light most favorable to Plaintiff, he has raised a genuine issue of material fact as to whether Lieutenant Washburn is shielded by qualified immunity. *See Saucier*, 533 U.S. at 202 (for a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"); *Smith v.*

*Sergent*, No. 215CV0979GEBDBP, 2017 WL 4284659, at *8 (E.D. Cal. Sept. 27, 2017) (denying qualified immunity where defendant should have been aware that ignoring a plaintiff's complaints that he was in pain and pleas to loosen the handcuffs could constitute excessive force, violating the Eighth Amendment.). Accordingly, Defendants' motion for summary judgment must be denied as to Plaintiff's excessive force claim against Lieutenant Washburn.

### 2.    *Intentional Infliction of Emotional Distress ("IIED") Claim*

Plaintiff alleges that Lieutenant Washburn's conduct constitutes intentional infliction of emotional distress. Defendants argue that Lieutenant Washburn is not a proper defendant for an IIED claim and that the State of Oregon should be substituted in his place. Defs.' Mot. for Summ. J. at 10. Upon substitution, the State of Oregon must also be dismissed because of its sovereign immunity. *Id.*

Plaintiff's IIED claim arises under state law. *See* OR. REV. STAT. § 30.265(3) (instructing that "the sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties . . . is an action against the public body only"). The Eleventh Amendment prohibits federal courts from entertaining lawsuits brought by citizens against a state without the state's express consent. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996). Although "the State of Oregon has consented to be sued in Oregon courts for the torts committed by its employees, officers, or agents while acting within the course and scope of their employment under the OTCA, it has not consented to be sued in federal courts for those torts." *Blair v. Toran*, No. CV-99-956-ST, 1999 WL 1270802, at *23 (D. Or. Dec. 2, 1999), *aff'd*, 12 F. App'x 604 (9th Cir. 2001). Plaintiff's IIED claim therefore is barred by the OTCA and the Eleventh Amendment, and Defendants are entitled to summary judgment.

III.    Inadequate Medical Care (Claim 3)

 *A. Factual Background*

 On February 13, 2019, Plaintiff was transferred from Eastern Oregon's infirmary to Two Rivers. Wettlaufer Decl. at 2, ECF No. 93. Neither party explicitly states why Plaintiff had been in the infirmary. Nursing staff at Eastern Oregon, however, sent a report to nursing staff at Two Rivers in connection with Plaintiff's transfer, stating that Plaintiff was ambulating on his own and could be housed in the general population, not the infirmary. *Id.* at 2, 5-12. At the time of Plaintiff's transfer, his medical notes listed his "disability or special equipment needs" as "single level facility" only. *Id.* at 7. Two Rivers is a single-level institution. *Id.* at 3.

 Plaintiff claims that when he arrived at Two Rivers, he could not walk even short distances, including to the food service area. Pl.'s Resp. in Opp'n at 10-11. He states that he had been issued a wheelchair on February 13, but that Medical Manager Johnston ordered that it be taken away the same day. *Id.* at 10; Compl. at 10. Because he did not have a wheelchair, he could not walk to the food services area for meals from February 13 to 18.[5] Compl. at 10.

 Defendants present evidence that Medical Manager Johnston's only interaction with Plaintiff was on February 13, when Plaintiff arrived at the facility. Wettlaufer Decl. at 2; Defs.' Reply at 5. At that time, she informed Plaintiff that "he did not have an order on file for a wheelchair and that he would need to walk and use his cane to assist with mobility." Wettlaufer Decl. at 2, 6. On February 16, medical staff told Plaintiff that, in order to get a wheelchair, he needed to sign up for sick call to be evaluated, which he did on February 17. *Id.* at 2, 13-14. On February 19, Nurse Gruenwald evaluated Plaintiff and recommended that Plaintiff continue using

---

[5] Plaintiff clarifies in his response papers that his deliberate indifference claim arises from the failure to issue him a wheelchair, not from any alleged denial of food. Pl.'s Resp. in Opp'n at 11-12.

PAGE 14 – OPINION AND ORDER

his cane for daily mobility, ordered a wheelchair for Plaintiff's use over long distance, and allowed for an orderly to assist Plaintiff with meal trays. Wettlaufer Decl. at 3, 5, 19; Pl.'s Resp. in Opp'n at 11.

    B.    *Analysis*

        1.    *Inadequate Medical Care Under the Eighth Amendment*

Plaintiff alleges that Medical Manager Johnston and Nurse Gruenwald were deliberately indifferent to his serious medical need when they failed to issue him a wheelchair to assist with mobility. Compl. at 10-11. Defendants argue that they are entitled to summary judgment because there is no evidence that either Medical Manager Johnston or Nurse Gruenwald knew of and disregarded any risk of harm to Plaintiff during their single interactions with him, and that such interactions bookended what Defendants characterize as a six-day hunger strike for a wheelchair. Defs.' Mot. for Summ. J. at 14-15.

To sustain an Eighth Amendment claim for denial of adequate medical care, Plaintiff must establish the existence of "a serious medical need" and show that Defendants' "response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "A medical need is serious when the failure to treat it could result in significant injury or the unnecessary and wanton infliction of pain." *Id.* at 1096. Deliberate indifference may be demonstrated by prison officials' denying, delaying, or intentionally interfering with medical treatment, or by the manner in which they provide medical treatment. *Estelle v. Gamble*, 429 U.S. 104, 105 (1976). The prison official must know of and disregard an excessive risk to an inmate's health. *Wiley v. Oregon*, No. 2:17-CV-00664-JO, 2019 WL 4261112, at *1 (D. Or. Sept. 9, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Although Plaintiff alleges that Medical Manager Johnston took away his wheelchair upon his arrival at Two Rivers, his medical records show that he did not have a wheelchair order before or upon his arrival at that institution. Wettlaufer Decl. at 2, Ex. 2 at 2. Indeed, Plaintiff's transfer records indicate that immediately before his transfer to Two Rivers, he was ambulating without difficulty and that had been issued a cane to assist with mobility. *Id.* Medical Manager Johnston advised Plaintiff that he did not have an order for a wheelchair and advised him to walk and use his cane. *Id.* That Plaintiff disagrees with this course of action does not amount to an Eighth Amendment violation. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (explaining that if an inadequate medical care claim involves choices between alternative courses of treatment, an individual in custody must establish "that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to [his] health").

Nurse Gruenwald only became involved in Plaintiff's care on February 19, when she evaluated Plaintiff and approved of his use of wheelchair over long distances. Wettlaufer Decl. at 2, Ex 2 at 1. Although Plaintiff alleges that Nurse Gruenwald was deliberately indifferent to his serious medical need, the record shows that she evaluated Plaintiff's condition, prescribed more than one mobility aid – including a wheelchair – for Plaintiff's use, and ordered an orderly to carry Plaintiff's food trays. The Court cannot conclude, on these facts, that Nurse Gruenwald's conduct violated the Eighth Amendment.

In sum, Plaintiff fails to establish that Defendants knew of and disregarded an excessive risk to Plaintiff's health on February 13, when Medical Manager Johnston allegedly failed to provide Plaintiff with a wheelchair based on his transfer medical record, and on February 19, when Nurse Gruenwald evaluated him and did in fact order a wheelchair. Medical Manager Johnston

and Nurse Gruenwald therefore are entitled to summary judgment as to Plaintiff's claim that he was denied adequate medical care in violation of the Eighth Amendment.

### 2.    *Alleged Violations of the ADA*

Plaintiff alleges that Defendants violated the ADA, presumably for their refusal to issue him a wheelchair. Defendants argue Plaintiff's ADA claim fails as a matter of law because he has not alleged that he was denied any benefits due to any disability and he has not named a proper defendant. Defs.' Mot. for Summ. J. at 14-15.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132 (2007); *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1021-22 (9th Cir. 2010) (*overruled in part on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)). To the extent that Plaintiff attempts to raise an ADA claim based on Defendants' failure to issue him a wheelchair, he cannot do so because the ADA prohibits discrimination because of disability, not inadequate treatment for disability. *Simmons,* 609 F.3d at 1021-22; *see also Marlor v. Madison Cty., Idaho*, 50 F. App'x 872, 873 (9th Cir. 2002) ("Inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld by reason of a disability.").

Even if Plaintiff's could show that Defendants discriminated against him because of a disability in violation of the ADA, his claim fails because he has not named a proper defendant. The proper defendant for a claim under Title II of the ADA is the public entity responsible for the alleged discrimination. 42 U.S.C. § 12132. A public entity is defined as:

> (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 502(8) of Title 45).

42 USC § 12131(1); *United States v. Wishart*, 146 F. App'x 171, 173 (9th Cir. 2005). Indeed, the Ninth Circuit has held that a plaintiff "cannot bring an action under 42 U.S.C. § 1983 against a state official in his or her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

Plaintiff concedes that he has failed to name a proper defendant for his ADA claim. Pl.'s Resp. in Opp'n at 15-16. However, he seeks leave to "sever this claim under Title II of the ADA, to amend his Complaint to remove Title II of the ADA from the language of any of the claims included in the complaint, and for leave to file the claim against the ODOC under 28 U.S.C. § 2254 . . . ." *Id.* at 16. Defendants object to Plaintiff's request. Defs.' Reply at 5.

The Court denies Plaintiff's request to effectively amend his Complaint by raising a new theory of liability in his response to Defendants' motion for summary judgment because it is not properly made or supported, and it would be overly prejudicial to Defendants at this stage of litigation. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("[A]dding a new theory of liability at the summary judgment stage would prejudice the defendant who faces different burdens and defenses under this second theory of liability."). For all these reasons, Defendants are entitled to summary judgment as to Plaintiff's ADA claims.

IV.    Sexual Harassment (Claim 4)

A.    *Factual Background*

Plaintiff alleges that Officer John Doe sexually harassed, belittled and threatened him during a strip search upon his arrival at Eastern Oregon on January 15, 2019. Compl. at 11-12. Plaintiff generally claims that Officer John Doe made inappropriate and homophobic remarks

about him and his genitals. *Id.* at 12. Plaintiff reported the incident to Superintendents Pedro and Washburn, and called the Prison Rape Elimination Act ("PREA") hotline to report the incident.[6] *Id.* Plaintiff also filed a grievance. Stewart Decl. at 16-22, ECF No. 90. Superintendent Washburn responded to Plaintiff's grievance appeal and found "that the [Eastern Oregon] staff performed their duties in accordance with ODOC rules, policies and procedures." *Id.* at 15.

 B. *Analysis*

  *1. Officer John Doe*

 Although this case has been pending for over two years, Plaintiff did not identify or properly serve Officer John Doe. On June 17, 2020, the Court stated that Plaintiff must ascertain the identity of Officer John Doe through discovery. Docket Entry dated June 17, 2020, ECF No. 12. The Court issued a Scheduling Order setting a 120-day deadline to complete discovery. Order dated September 3, 2020, ECF No. 21. The discovery deadline was extended multiple times and discovery closed on July 13, 2022. *See* Docket Entry dated July 6, 2022, ECF No. 88. The Court therefore must dismiss without prejudice all claims against Officer John Doe for failure to prosecute. *Wilcox v. Batiste*, 360 F. Supp. 3d 1112, 1126 (E.D. Wash. 2018) (explaining that "where a plaintiff fails to take reasonable efforts to identify the unknown defendants, the district court can dismiss for failure to prosecute.").

 Even if Plaintiff had named a proper defendant, his harassment claim fails because a claim of verbal sexual harassment, alone, is not actionable under Section 1983. *Anderson v. Silva*, No. 1:18-CV-01612-BAM (PC), 2019 WL 484191, at *3 (E.D. Cal. Feb. 7, 2019), *report and recommendation adopted*, No. 1:18-CV-01612-LJO-BAM (PC), 2019 WL 11504872 (E.D. Cal.

---

[6] Plaintiff's PREA complaint was investigated by Captain Tye Stewart. Stewart Decl. at 2. Superintendents Pedro and Washburn were not involved in the PREA investigation. *Id.* at 3.

Feb. 20, 2019) ("the Eighth Amendment's protections do not generally extend to mere verbal sexual harassment") (citation omitted).

While the Ninth Circuit has held that sexual harassment can violate the Eighth Amendment, the Court differentiates between sexual harassment that involves only verbal abuse – which does not violate the constitution – and those that allege physical assault – which can rise to the level of a constitutional violation. *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1198 (9th Cir. 2000)); *see, e.g.*, *Patrick v. Martin*, 402 F. App'x 284, 285 (9th Cir. 2010) (affirming dismissal of sexual harassment claim based on defendant's comments to plaintiff, because verbal harassment is insufficient to state a section 1983 claim).

### 2.    *Superintendents Pedro and Washburn*

To the extent Plaintiff seeks to hold Superintendents Pedro and Washburn liable for the alleged Officer John Doe's alleged sexual harassment based solely on their supervisory roles at Eastern Oregon, he may not do so. *Taylor*, 880 F.2d at 1045 (explaining that a *respondeat superior* theory of liability is not available in a § 1983 action). Rather, supervisory liability exists only if the supervisor is personally involved in the constitutional deprivation or if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation" alleged. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Although Plaintiff reported the alleged sexual harassment to Superintendents Pedro and Washburn, Plaintiff provides no evidence that they were personally involved in or otherwise aware of Officer John Doe's conduct prior to Plaintiff's report. Plaintiff therefore cannot establish that Superintendents Pedro or Washburn are liable for the sexual harassment Plaintiff suffered based on their supervisory liability. In addition, Plaintiff cannot hold Superintendent Washburn liable denying Plaintiff's grievance appeal about

this issue. *Ramirez*, 334 F.3d at 860 (prisoners have no constitutional right to a prison grievance system, and the actions of the prison officials in reviewing an internal appeal cannot create liability under § 1983). Accordingly, Superintendents Pedro and Washburn are entitled to summary judgment.

To the extent Plaintiff seeks to bring IIED or ADA claims against Superintendent Pedro and Washburn in connection with this incident, neither are proper defendants to such claims. As explained above, state law IIED claims are barred by the OTCA and the Eleventh Amendment, *see* OR. REV. STAT. § 30.265(1); *Seminole Tribe of Fla.*, 517 U.S. at 54, and there is no individual liability under Title II of the ADA, *Vinson*, 288 F.3d at 1156. Accordingly, Superintendents Pedro and Washburn are entitled to summary judgment.

### V.    Removal from ROC Dog Handers Program (Claim 5)

*A.    Factual Background*

The Dog Handlers Program at Two Rivers took in stray dogs from the community, and a team of three inmates were assigned to care for them. Wagner Decl. at 2, ECF No. 91. Inmates participating in the program – which was a popular work assignment – worked with a trainer to train and prepare the dogs for adoption. *Id.*

From July 21, 2017, through June 28, 2018, Plaintiff was assigned to the Dog Handlers Program. *Id.* On June 28, Plaintiff was moved to the Disciplinary Segregation Unit ("DSU") due to an unrelated misconduct report. *Id.* at 3, 13-14; Compl. at 13. As a result, he missed thirteen days of work and was removed from the program. Compl. at 12-13. When he was released from the DSU, Plaintiff requested to be reinstated to the Dog Handlers Program but his requests were repeatedly denied by Supervisor Wagner based on his failure to attend the program during his thirteen-day segregation. Pl.'s Resp. in Opp'n at 20; *see also* Wagner Decl. at 4 ("[Plaintiff] was

removed due to his 13-day absence, which is more than what is considered a reasonable absence

for this unique program, given both the constant care that the dogs required and its popularity as

an [adult in custody ("AIC")] work assignment.")

     *B.    Analysis*

     Plaintiff alleges that Supervisor Wagner, Counselor Martinez and Superintendent Bowser

wrongfully removed him from the Dog Handlers Program without due process of law.[7] Pl.'s Resp.

in Opp'n at 22. He also asserts a claim for IIED and a violation of the ADA. Compl. at 12.

Defendants assert that they are entitled to summary judgment because there is no due process or

liberty interest in a prison work assignment. Defs.' Reply at 6.

     An individual in custody's expectation of having or keeping a specific prison job does not

implicate a property or liberty interest under the Fourteenth Amendment. *Walker v. Gomez*, 370

F.3d 969, 973 (9th Cir. 2004) (explaining that there is no due process property or liberty interest

in prison employment). Because Plaintiff has no property or liberty interest in his work assignment

to the Dog Handlers Program, he has no due process rights arising out of his removal from that

position. Furthermore, Plaintiff cannot bring an IIED or ADA claim based on his removal from

the Dog Handlers program because, as discussed, *supra*, 1) he has not named a proper defendant

and his state law claim is barred by the OTCA and the Eleventh Amendment, OR. REV. STAT. §

30.265(1); *Seminole Tribe of Fla.*, 517 U.S. at 54, and 2) he has not alleged that he was denied any

---

[7] In his Complaint, Plaintiff alleges he was removed from the Dog Handlers Program in violation of the Fourteenth Amendment's Equal Protection Clause, "after years of abuse from the defendants, of their hate of my religious [illegible], sexual orientation and [his] mental disabilities." Compl. at 12-13. Defendants refute any allegation that Plaintiff's removal from the program was based on Plaintiff membership in any protected class, including religion, sexual orientation, or mental disability, in violation of Plaintiff's right to equal protection. Defs.' Mot. for Summ. J. at 19-20. In his response, Plaintiff clarifies that he intended to raise a due process claim. Pl.'s Resp. in Opp'n at 22.

benefits due to any disability and there is no individual liability under Title II of the ADA, *Vinson*, 288 F.3d at 1156.

CONCLUSION

For the reasons stated above, Defendants Motion for Summary Judgment, ECF No. 89, is GRANTED in part and DENIED in part. The Motion is DENIED with respect to Plaintiff's First Amendment claim against Defendant Chaplain Lorinda Schwarz and Plaintiff's Eighth Amendment claim against Defendant Lieutenant Brian Washburn. The motion is GRANTED in all other respects against all other named Defendants, and they are terminated from this action.

**IT IS SO ORDERED.**

DATED this ⸻ day of January 2023.

Mark D. Clarke
United States Magistrate Judge